**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JOUREY NEWELL**, *individually and on
behalf of a class of all persons and entities
similarly situated*,

          **Plaintiff,**

    **v.**

**RXLINK INC.,**

          **Defendant.**

          **CASE NO. 2:25-cv-4270-MRP**

**DEFENDANT RXLINK'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND ................................................. 1

II.   LEGAL STANDARD ................................................................ 5

III.  ARGUMENT ...................................................................... 5

    A.    Plaintiff's TCPA Claim Fails Because He Never Received a
        Telephone Call ............................................................ 5

        i.    Section 227(c) Does Not Provide a Private Right of Action
            for Text Messages ................................................. 5

        ii.   Any FCC Ruling to the Contrary Is Invalid. ........................... 8

    B.    Plaintiff's TCPA Claim Fails Because He Has Not Alleged a
        "Telephone Solicitation" as Defined by the TCPA. .......................... 10

    C.    The Emergency Purposes Exception Further Confirms That These
        Messages Are Not Telephone Solicitations. ................................ 16

IV.   CONCLUSION .................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

ACA Int'l v. FCC,
   885 F.3d 687 (D.C. Cir. 2018)....................................................................12, 24

Aderhold v. Car2go,
   2014 WL 794802 (W.D. Wash. Feb. 27, 2014)......................................16, 17

Aderhold v. Car2go,
   668 F. App'x 795 (9th Cir. 2016)....................................................................16

Ambassador Animal Hosp. v. Elanco Animal Health,
   74 F.4th 830 (7th Cir. 2023)............................................................................20

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...........................................................................................7

Bailey v. CVS Pharmacy,
   2018 WL 3866701 (D.N.J. Aug. 14, 2018)................................23, 24, 25

Barr v. Am. Ass'n of Pol. Consultants,
   591 U.S. 610 (2020).........................................................................................15

Bell Atl. v. Twombly,
   550 U.S. 544 (2007).......................................................................................6, 7

Boring v. Google,
   362 F. App'x 273 (3d Cir. 2010)......................................................................7

Dang v. XLHealth,
   2011 WL 553826 (N.D. Ga. Feb. 7, 2011)..................................................20

Daniel v. FiveStars Loyalty,
   2015 WL 7454260 (N.D. Cal. Nov. 24, 2015)....................................16, 17

Davis v. CVS Pharmacy,
   2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)............................9, 11, 13

Dennis v. Amerigroup Wash.,
   2020 WL 618472 (W.D. Wash. Feb. 10, 2020).......................................6, 22

Facebook v. Duguid,
   592 U.S. 395 (2021)......................................................................................8, 12

Gabertan v. Walmart,
   523 F. Supp. 3d 1254 (W.D. Wash. 2021)..............................................6, 22

Gragg v. Orange Cab,
   145 F. Supp. 3d 1046 (W.D. Wash. 2015)............................................16, 17

Guglielmo v. CVS Pharmacy,
   2021 WL 3291532 (D. Conn. Aug. 2, 2021)......................................24, 25

Henry v. Essex Cnty.,
   113 F.4th 355 (3d Cir. 2024).............................................................................6

Hulce v. Zipongo,
    132 F.4th 493 (7th Cir. 2025) ................................................................. 19, 20

Ins. Mktg. Coal. v. FCC,
    127 F.4th 303 (11th Cir. 2025) ................................................................ 12

Jackson v. Safeway,
    2016 WL 5907917 (N.D. Cal. Oct. 11, 2016) ........................................... 25

Jones v. Blackstone Med. Servs.,
    2025 WL 2042764 (C.D. Ill. July 21, 2025) ......................................... 4, 9, 13

Latner v. Mount Sinai Health Sys.,
    879 F.3d 52 (2d Cir. 2018) ...................................................................... 23

Lindenbaum v. CVS Health,
    2018 WL 501307 (N.D. Ohio Jan. 22, 2018) .......................................... 6, 22

Loper Bright Enters. v. Raimondo,
    603 U.S. 369 (2024) ......................................................................... 4, 11, 14

Mainstream Mktg. Servs. v. FTC,
    358 F.3d 1228 (10th Cir. 2004) ................................................................ 16

McLaughlin Chiropractic Assocs. v. McKesson,
    606 U.S. 146 (2025) ...................................................................... 10, 11, 13

Perrin v. United States,
    444 U.S. 37 (1979) .................................................................................... 8

Roberts v. Medco Health Sols.,
    2016 WL 3997071 (E.D. Mo. July 26, 2016) .......................................... 6, 22

Rothman v. Cabana Series IV Tr.,
    2024 WL 1405393 (3d Cir. Apr. 2, 2024) .................................................. 7

S. Cross Overseas Agencies v. Wah Kwong Shipping Grp.,
    181 F.3d 410 (3d Cir. 1999) ...................................................................... 2

Schulz v. Infogroup,
    2020 WL 4201636 (N.D. Tex. July 21, 2020) ........................................... 19

Smith v. First Hosp. Labs.,
    77 F.4th 603 (7th Cir. 2023) ..................................................................... 20

Stubbs v. United States,
    2024 WL 1600332 (M.D. Pa. Jan. 19, 2024) .............................................. 2

United States ex rel. Alejandro v. Philadelphia Vision Ctr.,
    2021 WL 22870 (E.D. Pa. Jan. 4, 2021) ..................................................... 2

Va. St. Bd. of Pharmacy v. Va. Citizens Consumer Council,
    425 U.S. 748 (1976) ................................................................................. 15

Wick v. Twilio,
    2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) ........................................ 16

Zani v. Rite Aid,
    246 F. Supp. 3d 835 (S.D.N.Y. 2017) ........................................................................ 24

**Statutes**

47 U.S.C. § 227 .................................................................................................passim

Fla. Stat. § 501.059(1)(j) (2023) ..................................................................................... 7

Pub. L. No. 102–243, 105 Stat. 2394, at § 3 (1991).......................................................... 12

Tex. Bus. & Com. Code § 302.001 (as amended in 2025) .................................................... 7

**Rules**

Rule 12(b)(6) ................................................................................................................2, 5

**Regulations**

45 C.F.R. § 160.103.......................................................................................................... 18

47 C.F.R. § 64.1200.................................................................................................passim

Targeting & Eliminating Unlawful Text Messages,
    89 Fed. Reg. 5098 (Jan. 26, 2024) ......................................................................... 8

**Historical Legislation**

H.R. Rep. No. 102–317, at 16 (1991) ............................................................................. 12

**FCC Opinions**

2015 Order, 30 F.C.C. Rcd. at 8031 147...........................................................4, 16, 18

In re Rules and Regulations Implementing the TCPA,
    7 FCC Rcd. 8752 (Oct. 16, 1992) ............................................................................. 4

In the Matter of Rules & Reguls. Implementing the TCPA of 1991,
    30 F.C.C. Rcd. 7961 (2015) ..................................................................................... 4

In the Matter of the TCPA of 1991,
    7    F.C.C. Rcd. 2736 (Apr. 17, 1992) ..................................................................... 16

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Jourey Newell is a repeat litigant who has filed at least ten putative class actions over the past year, nine of which assert claims under the TCPA, and eight of which have been filed in this District.[1] In 2021 and 2023, Mr. Newell filed two lawsuits complaining about calls to his prior phone number, 484-213-XXXX (the "Original Number").[2] After experiencing how profitable a TCPA claim could be, he obtained a number recently owned by someone else — 484-782-XXXX (the "New Number"). Compl. ¶ 20. He then received text messages intended for the consenting prior subscriber and filed multiple class actions, including this case.

RxLink, on the other hand, is a healthcare technology company whose parent, DoseSpot, operates an electronic prescribing platform that helps healthcare providers manage patient records and send prescriptions.[3] *See* Compl. ¶ 16. When a provider prescribes medication through DoseSpot, RxLink automatically identifies potential cost-saving opportunities — like insurance coverage, manufacturer assistance, or discount programs — at the pharmacy the patient chose. RxLink then sends informational text messages to patients to notify them when their prescriptions have been filled and, if applicable, how to access available discounts. These communications improve prescription adherence, reduce

---

[1] *See Newell v. Children's Dental Health Assocs.*, No. 2:25-cv-5238 (E.D. Pa. Sept. 11, 2025); *Newell v. Yoke Global*, No. 1:25-cv-3049 (N.D. Ga. Jun. 2, 2025); *Newell v. Hoffenner*, No. 1:25-cv-03961 (N.D. Ill. Apr. 11, 2025); *Newell v. JR Cap.*, No. 2:25-cv-1419 (E.D. Pa. Mar. 17, 2025); *Newell v. RiseUp Fin. Grp.*, No. 2:25-cv-1402 (E.D. Pa. Mar. 17, 2025); *Newell v. BKV-BPP Retail*, No. 1:25-cv-395 (W.D. Tex. Mar. 15, 2025); *Newell v. Lift Lending*, No. 2:25-cv-1210 (E.D. Pa. Mar. 6, 2025); *Newell v. LendVia*, No. 2:25-cv-1018 (E.D. Pa. Feb. 26, 2025); *Newell v. Hawthorne Bus. Cap.*, No. 2:25-cv-962 (E.D. Pa. Feb. 24, 2025).

[2] *See Newell v. Stone & Saunders*, No. 2:23-cv-3048 (E.D. Pa. Aug. 8, 2023) and *Newell v. Adroit Health Grp.*, No. 2:21-cv-5079 (E.D. Pa. Nov. 18, 2021).

[3] *See* RxLink, *RxLink is Acquired by DoseSpot* (press release) (Dec. 30, 2024), https://rxlink.com/rxlink-is-acquired-by-dosespot/.

healthcare costs, and alleviate administrative burdens on medical staff. RxLink does not sell or advertise products or services to consumers, and it sends messages only in connection with prescriptions issued by independent healthcare providers.[4]

Mr. Newell alleges that, despite listing his number on the National Do Not Call Registry, he received a handful of text messages from RxLink between June and July 2025. *Id.* ¶¶ 20–22. The messages stated that "Dr. Shum wrote you a prescription" and provided information about prescribed medication that would be filled at a "Pennsylvania CVS Pha[rmacy]" and coupons to "save on your [] Rx." *Id.* ¶ 22. Each text included an opt-out instruction ("STOP to end") and identified RxLink as the sender. *Id.* The communications contained no sales pitch, sought no payment, and merely provided cost-saving information relating to the prescribed medications. *Id.*

Though Mr. Newell alleges that the messages sent to the New Number were "unwanted," *id.* ¶ 26, he never responded "STOP." *See id.* ¶ 22. Had he done so, the messages would have ceased, and there would be no claim, since the claim he brings only provides a private cause of action for two violations in 12 months. *See* 47 U.S.C. § 227(c)(5). Instead, Mr. Newell let the messages mount. Then he made a federal case out of prescription-reminder

---

[4] Defendant includes limited factual information outside the Complaint solely to provide relevant background and context. These facts are not necessary to the Court's resolution of this motion and are not offered for the truth of the matters asserted. *See S. Cross Overseas Agencies v. Wah Kwong Shipping Grp.*, 181 F.3d 410, 426 (3d Cir. 1999) (finding judicial notice of "another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion" did not convert 12(b)(6) motion into summary judgment motion); *United States ex rel. Alejandro v. Phila. Vision Ctr.*, 2021 WL 22870, at *2 n.3 (E.D. Pa. Jan. 4, 2021) (considering documents filed in plaintiff's prior suit in part because "[a]s the plaintiff in the prior suit, [she] has notice of the facts she alleged and the claims she raised and their disposition"); *see also Stubbs v. United States*, 2024 WL 1600332, at *4 (M.D. Pa. Jan. 19, 2024) (although not relying on facts outside the complaint to resolve Rule 12(b)(1) motion to dismiss, court considered such materials for sole purpose of determining whether to grant leave to amend).

communications that were triggered by the physician of the consenting prior owner of the New Number.

He asserts a single claim under 47 U.S.C. § 227(c). Collectively with the regulations promulgated thereunder, that Section provides a private cause of action for "more than one telephone call" in 12 months to a number registered on the national DNC, if it constitutes a "telephone solicitation," and absent an exception such as consent or an "established business relationship." *See* 47 U.S.C. § 227(c)(5); *id.* at (a)(4) (defining "telephone solicitation"). Mr. Newell's claim fails for three reasons: (1) § 227(c)(5) of the TCPA applies only to "telephone calls," not texts; (2) the texts alleged are not "telephone solicitations"; and (3) the "emergency purposes" framework confirms that the texts are not sales pitches.

As to the first point, the TCPA's private right of action for DNC claims applies only to persons who receive "more than one ***telephone call***[.]" *See* 47 U.S.C. § 227(c)(5) (emphasis added); Compl., Count I (asserting claims under § 227(c) of the TCPA and its implementing regulation, 47 C.F.R. § 64.1200(d)). Mr. Newell doesn't allege that he received a "telephone call," only texts. *See* Compl. ¶ 22. Texts are not "telephone calls" — in ordinary conversation or statutory interpretation. No one would interpret "Joe called Sally" to mean Joe texted Sally. This was even more true when the TCPA was enacted in 1991, as text messages didn't exist at the time. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("[E]very statute's meaning is fixed at the time of enactment.") (cleaned up). Because Mr. Newell alleges receiving only texts and, "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages," the Court should dismiss the Complaint. *Jones v. Blackstone Med. Servs.*, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025).

Second, the text messages at issue are not "telephone solicitations" within the meaning of § 227(c). Plaintiff alleges that he received texts that sought to "solicit new clients for the Defendant's healthcare services." Compl. ¶ 24. But there are no well-pleaded facts to support that allegation. The messages did not offer any product or service for sale, request payment, or even ask Plaintiff to purchase anything. *See id.* ¶ 22. In fact, the Complaint concedes that RxLink is a healthcare platform that "connect[s]" patients to pharmacies — not a seller of pharmaceuticals or any other services for purchase by consumers. *Id.* ¶ 16. Messages like these, which convey logistical information about existing transactions, are not telephone solicitations. Plaintiff fails to state a claim for this additional reason.

Third, the TCPA's "emergency purposes" framework underscores that the texts are not telephone solicitations. Courts and the FCC have consistently held that prescription reminders convey healthcare information, not sales pitches.[5]  The FCC has long explained that prescription-related communications, including reminders and notifications, serve important public health functions and therefore are treated as non-telemarketing messages. *See In re Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8778 (Oct. 16, 1992); *In the Matter of Rules & Reguls. Implementing the TCPA of 1991*, 30 F.C.C. Rcd. 7961, 8031–32 ¶¶ 146–47 (2015) ("2015 Order"). Courts have agreed, consistently recognizing that prescription-related messages, even when sent to the wrong number, are informational and not commercial solicitations. *See Gabertan v. Walmart*, 523 F. Supp. 3d 1254, 1261 (W.D.

---

[5] Though RxLink itself is not a HIPAA-covered entity, this does not matter. The FCC has recognized that business associates acting on behalf of covered entities may also make HIPAA-covered calls, and RxLink's communications — made on behalf of health providers and pharmacies — fall squarely within that framework. *See* 2015 Order, 30 F.C.C. Rcd. at 8031 ¶ 147 (recognizing that HIPAA-covered calls encompass communications "made by or on behalf of" covered entities).

Wash. 2021); *Lindenbaum v. CVS Health*, 2018 WL 501307, at *2 (N.D. Ohio Jan. 22, 2018); *Roberts v. Medco Health Sols.*, 2016 WL 3997071, at *3 (E.D. Mo. July 26, 2016); *Dennis v. Amerigroup Wash.*, 2020 WL 618472, at *6–7 (W.D. Wash. Feb. 10, 2020).

For all these reasons, the Court should dismiss the Complaint with prejudice.

## II.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate where a complaint fails to state a legally cognizable claim or lacks sufficient factual allegations to support one. *Henry v. Essex Cnty.*, 113 F.4th 355, 360 (3d Cir. 2024) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must contain factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the plaintiff pleads factual content allowing the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.*

While courts must accept well-pleaded factual allegations as true, they need not accept "labels and conclusions," "[t]hreadbare recitals of the elements of a cause of action," or legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Boring v. Google*, 362 F. App'x 273, 278 (3d Cir. 2010) ("[C]onclusory allegations of liability will not suffice."). Dismissal with prejudice is appropriate when, as here, amendment would be futile. *See Rothman v. Cabana Series IV Tr.*, 2024 WL 1405393, at *2 (3d Cir. Apr. 2, 2024).

## III.    ARGUMENT

### A.    Plaintiff's TCPA Claim Fails Because He Never Received a Telephone Call

#### i.    *Section 227(c) Does Not Provide a Private Right of Action for Text Messages*

Mr. Newell's DNC claim fails because he does not allege that he received any phone calls from RxLink. The TCPA creates a private right of action for "a person who has received

more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). Neither the statute nor the relevant regulations — 47 C.F.R. § 64.1200(c)–(d) — make any reference to text messages, and the phrase "telephone call" does not encompass them.

Congress did not define "telephone call" in the TCPA, but in 1991, when the statute was enacted, the term was universally understood to mean voice-based communications. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (courts interpret statutory terms according to their "ordinary, contemporary, common meaning"). Text messaging, as a technology, did not exist, and the first text message was not sent until December 1992.[6] Rather, at the time, "telephone" meant a system "for transmission of sound or speech," and the idea that a text message could qualify as a "telephone call" would have been alien to ordinary usage. *See Random House Webster's College Dictionary* (1st ed. 1991). Unlike voice calls, texts do not tie up phone lines or require real-time interaction — they are passive, asynchronous written communications more akin to emails or app alerts.

The Supreme Court has warned against judicial efforts to retroactively "modernize" the TCPA by stretching terms beyond their original meaning. In *Facebook v. Duguid*, 592 U.S. 395 (2021), the Court unanimously reversed an expansive interpretation of the TCPA, holding that courts may not rewrite the statute to keep up with changing technology. The same logic applies here. If "telephone call" meant "text message," then any communication capable of being transmitted via the phone — emails, app alerts, social media notifications — could arguably fall within the statute. But Congress chose not to go that far.

---

[6] Rose Eveleth, The First Text Message, Sent Twenty Years Ago, Was 'Merry Christmas', SMITHSONIAN MAGAZINE (2012), https://www.smithsonianmag.com/smart-news/the-first-text-message-sent-twenty-years-ago-was-merry-christmas-152311567/.

Recent decisions confirm that conclusion. Both the Central District of Illinois and the Northern District of Florida have dismissed DNC claims under § 227(c) based on text messages, finding that the statute plainly does not apply to them. *See Jones v. Blackstone Med. Servs.*, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025) ("under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages"); *Davis v. CVS Pharmacy*, 2025 WL 2491195, at *3–4 (N.D. Fla. Aug. 26, 2025) (same). As the *Blackstone* court noted, "nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." And the reference to "telephone solicitation" reinforces that point. Congress used the phrase "telephone call or message" in § 227(a)(4), but only "telephone call" in § 227(c)(5), signaling that it intended to exclude other forms of communication—like texts—from the private right of action. *See Davis*, 2025 WL 2491195, at *3 ("courts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters") (cleaned up).

Congress also demonstrated that it knows how to legislate specifically with respect to text messages. In 2018, Congress amended § 227(e) of the TCPA to address spoofing and caller ID manipulation. That provision applies expressly to both "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)–(B). It then goes on to define "text message" as something that does not include real-time, two-way voice communications — *i.e.*, a telephone call. *Id.* § 227(e)(8)(C). Had Congress intended to include text messages within the scope of § 227(c)'s private right of action, it could have done so then, just as some state legislatures have since done. *See, e.g.*, Fla. Stat. § 501.059(1)(j) (2023) (amending "telephonic sales call" to include calls, texts, and voicemails); Tex. Bus. & Com. Code § 302.001 (as amended in 2025) (same).

Because Mr. Newell alleges only that he received text messages, not telephone calls, he cannot invoke § 227(c), and his claim fails as a matter of law.

### ii.    Any FCC Ruling to the Contrary Is Invalid

*McLaughlin Chiropractic Assocs. v. McKesson* further compels that conclusion. That decision requires this Court to independently interpret and apply the plain text of the TCPA and not defer to FCC interpretations. 606 U.S. 146, 155 (2025). Under that framework, it bears noting that Congress granted the FCC authority under § 227(b)(2) and (c)(2) to adopt implementing regulations and grant exemptions, but not to enlarge the private rights of action Congress created in § 227(b)(3) and (c)(5). Although — pre-*McLaughlin* — the FCC informally opined that its regulations under Section 227(c) cover texts, the opinion is irrelevant. *See* Targeting & Eliminating Unlawful Text Messages, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024) (treating texts as "calls"). What matters for this Motion is not whether RxLink violated the TCPA (it didn't), but whether Mr. Newell has a private cause of action under Section 227(c). He does not.

The private right of action under § 227(c)(5) is for "telephone call[s]" alone, not text messages. *See* supra § III.A.i. Congress could "reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *Davis*, 2025 WL 2491195, at *3. And regulating callers "could serve the purpose of protecting consumers even if Congress created no private right of action at all." *Id.* Under *McLaughlin* and *Loper Bright*, courts must apply the statute's plain meaning, not defer to contrary FCC interpretations of its own regulations, which use different language than the private cause of action at issue in this case. 606 U.S. at

155, 168–69; 603 U.S. at 388–89. Both in 1991 and today, the ordinary meaning of "telephone call" is a voice call, and the FCC cannot rewrite the TCPA to say otherwise.

For decades, lower courts often erroneously deferred to interpretations by agencies like the FCC, even when they were counterintuitive and changed from administration to administration. Most courts followed the FCC's expansive view of "autodialer," for example. That ended when the Supreme Court unanimously reversed that definition, refusing to interpret that term beyond the precise "autodialer" definition that Congress chose when it enacted the TCPA. *See Duguid*, 592 U.S. at 396–97. There, the Court confirmed that it "must interpret what Congress wrote," and "'[s]enescent' [outdated] as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading." *Id.* at 409.

That deference was, in part, due to the Administrative Procedures Act's (APA) perceived limitation on challenging agency interpretations in enforcement proceedings. In the few cases where circuit courts heard *direct* APA challenges, they reversed far more thoughtful FCC opinions. *See, e.g.*, *Ins. Mktg. Coal. v. FCC*, 127 F.4th 303, 315 (11th Cir. 2025) ("We thus reject the FCC's one-to-one consent restriction" as inconsistent with the statutory definition of "prior express consent"); *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018) ("[W]e set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent.").

Now, through *McLaughlin*, the Supreme Court has confirmed that this Court must conduct that same analysis, which was formerly reserved for the circuit courts. 606 U.S. at 157–59 ("[T]he default rule is that district courts in enforcement proceedings may conclude

that an agency's interpretation of a statute is incorrect"). And because the FCC opinion conflicts with the plain meaning of the statute, the Court may not defer to it.

Deferring to the FCC's "interpretation" and expanding Section 227(c)(5) to create liability for texts would invent a cause of action — a policy choice reserved to Congress, not the courts or the FCC. Both *Blackstone* and *Davis* recognized that *McLaughlin* prohibits that outcome. It would "legislate by reading into the TCPA something that is not there[.]" *Blackstone*, 2025 WL 2042764, at *5; *Davis*, 2025 WL 2491195, at *3 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose.").

Deferring to the FCC and expanding the TCPA's private cause of action to cover text messages may seem tempting, "given the TCPA's purpose and the prevalence of text messaging in the U.S. today." *Blackstone*, 2025 WL 2042764, at *5. But "in the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible." *Id.* (quoting *Loper Bright*, 603 U.S. at 400) (cleaned up). "It is for Congress," not the Court or the FCC, "to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025." *Id.* In short, the statute's plain language controls. Section 227(c)(5) provides a private cause of action for "telephone call[s]," not text messages. Regardless of shifting FCC positions on what its regulations mean, this Court must apply the best reading of the private cause of action in Section 227(c) and dismiss the Complaint.

## B.    Plaintiff's TCPA Claim Fails Because He Has Not Alleged a "Telephone Solicitation" as Defined by the TCPA

Plaintiff's claim also fails because the TCPA's DNC provisions apply only to "telephone solicitations," and the text messages he received do not meet that definition. Section 227(c) tasks the FCC with devising rules needed "to protect residential telephone subscribers' privacy rights to avoid receiving <u>telephone solicitations</u> to which they object." *See*

47 U.S.C. § 227(c)(1) (emphasis added); *see also* 47 C.F.R. § 64.1200(c)(2). Pursuant to that authority, the FCC has directed that "[n]o person or entity shall initiate any <u>telephone solicitation</u> to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c) (emphasis added).

The statute defines a "telephone solicitation" as "the initiation of a telephone call or message **for the purpose of encouraging the purchase** or rental of, or investment in, **property, goods, or services**." 47 U.S.C. § 227(a)(4) (emphasis added). Congress deliberately limited this section of the TCPA to calls designed to solicit a purchase. Lawmakers sought to avoid First Amendment concerns that arise when a prohibition targets the content of speech, as opposed to the technology used. *See, e.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting "any call" to a cellphone using an autodialer or prerecorded voice); *Barr v. Am. Ass'n of Pol. Consultants*, 591 U.S. 610, 618 (2020) (in striking government debt exception, holding that targeting the content of speech is subject to strict scrutiny unless it is strictly commercial speech, *i.e.*, speech that does no more than promote a commercial transaction); *Va. St. Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 760 (1976) (recognizing that restrictions on commercial speech are permissible only when the communication "simply propose[s] a commercial transaction," as opposed to conveying "factual material of clear public interest.") (quotation marks omitted).

The TCPA's prohibition on "telephone solicitations" only to numbers registered on an internal or national DNC list — as opposed to all types of telephone calls — was carefully considered and crafted by Congress, which specifically recognized that the "most unwanted telephone solicitations are commercial in nature." H.R. Rep. No. 102–317, at 16 (1991). "The

TCPA therefore authorized the FCC to establish a national database of consumers who object to receiving 'telephone solicitations,' which the act defined as commercial **sales** calls." *Mainstream Mktg. Servs. v. FTC*, 358 F.3d 1228, 1235 (10th Cir. 2004) (citing Pub. L. No. 102–243, 105 Stat. 2394, at § 3 (1991)) (emphasis added).

Applying that framework, courts routinely hold that communications providing information in connection with an existing relationship or transaction — without promoting the purchase of goods or services — are not telemarketing or "telephone solicitations." *See Aderhold v. Car2go*, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014), *aff'd*, 668 F. App'x 795 (9th Cir. 2016); *Gragg v. Orange Cab*, 145 F. Supp. 3d 1046, 1049 (W.D. Wash. 2015); *Daniel v. FiveStars Loyalty*, 2015 WL 7454260, at *3–5, at *3 (N.D. Cal. Nov. 24, 2015); *see also Wick v. Twilio*, 2016 WL 6460316, at *1–3 (W.D. Wash. Nov. 1, 2016) (holding that text message stating "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http//hlth.co/xDoXEZ" did not constitute telemarketing, which shares the same definition as "telephone solicitation").

In *Aderhold*, for instance, the plaintiff received a single text message instructing him to enter an activation code to complete registration for a service he had requested. 2014 WL 794802, at *1. The court granted the defendant judgment on the pleadings and concluded that the message was purely functional, explaining there was "no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit Mr. Aderhold to complete registration." *Id.* at *9.

Likewise, in *Gragg*, the plaintiff ordered a taxi and received a dispatch notification stating, "Taxi #850 dispatched @ 05:20." 145 F. Supp. 3d at 1049. The court held the message was not a solicitation because it merely confirmed a transaction the customer had initiated

and "did not offer or encourage the purchase of any other goods or services." *Id.* And in *Daniel*, the court held that a text confirming enrollment in a rewards program immediately after the plaintiff inquired about it was informational, not promotional, because it simply explained how to complete a process the plaintiff had requested. 2015 WL 7454260, at *3–5.

The same reasoning applies here. Plaintiff alleges that RxLink sent him several text messages stating that "Dr. Shum wrote you a prescription" and providing information about where the prescription would be filled and how to save money on the medication. *See* Compl. ¶ 22.



These messages notified the prior owner of Plaintiff's New Number that "Dr. Shum" had written them a prescription, how they could save money on it, and how they could obtain additional information about it. The Complaint acknowledges that RxLink is an electronic healthcare platform, not a pharmacy or drug manufacturer trying to sell something. *Id.* ¶ 16.

Consistent with the authorities above, messages of this nature — providing logistical or cost-saving information about an existing healthcare transaction — are not "telephone solicitations" under the TCPA. RxLink offered nothing for sale, sought no payment from the recipient, and merely conveyed information designed to help the patient obtain already-prescribed medication at the lowest cost. Communications of that kind, sent to facilitate a doctor's prescription rather than to sell goods or services, fall outside the scope of § 227(c)'s prohibition on "telephone solicitations."

The Seventh Circuit's reasoning in *Hulce v. Zipongo*, 132 F.4th 493 (7th Cir. 2025) is also instructive. There, the court held that messages from Foodsmart promoting free services available through a healthcare plan were not "telephone solicitations" because they did not seek to encourage "someone who makes the purchasing decision to purchase its services." *Id.* at 496. The court explained that a communication qualifies as a solicitation only when it aims "'to persuade' or 'urge'" the party who makes the purchasing decision, and that the absence of a financial ask places such messages outside § 227(c)'s reach. *Id.* at 498 (citing *Schulz v. Infogroup*, 2020 WL 4201636, at *3 (N.D. Tex. July 21, 2020) ("Nothing . . . suggests that the [defendant] ultimately sought to sell or rent any service or product to [the plaintiff]") (alterations in *Hulce*).[7]

_____

[7] The requirement that a communication "encourage" *someone* to make a purchase is not unique to § 227(c). Courts have read the same element into other provisions of the TCPA. *See Hulce*, 132 F.4th at 498 (explaining that courts "have likewise read a requirement that someone be encouraged into other provisions of the TCPA," including the prohibition on "unsolicited advertisements," which — though silent as to the target — "require[s] an objective basis for recipients to conclude they are being encouraged to buy") (quoting *Smith v. First Hosp. Labs.*, 77 F.4th 603, 608 (7th Cir. 2023); citing *Ambassador Animal Hosp. v. Elanco Animal Health*, 74 F.4th 830, 833 (7th Cir. 2023)); *see also Dang v. XLHealth*, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (holding that faxes from a preferred provider organization to

That logic applies here with even greater force. Assuming Mr. Newell's own prescriptions did not trigger the messages, the messages did not, and could not, encourage *him* to purchase or pay for anything. Even if Mr. Newell had wanted to act on the texts by going to CVS and paying for the prescriptions mentioned, he couldn't have. The prescriptions were not written for him and could not lawfully be dispensed to him. *See* Compl. ¶ 23 (stating "Plaintiff made no such inquiry" prompting the prescription-related messages). They were informational messages intended for the prior owner about pharmacy access and cost-saving options. *See* Compl. ¶ 22.

And unlike *Hulce*, where the sender itself offered the services for which it would be reimbursed, RxLink is not a pharmacy, a drug manufacturer, or a seller of any kind. Newell does not even allege that RxLink offers products or services to consumers. *See id.* ¶ 16 (describing RxLink as "a healthcare technology platform that aims ***to connect*** patients to pharmacies," not a seller of pharmaceuticals) (emphasis added); *see also id.* ¶ 22 (depicting a message stating "RxLink is ***not*** a pharmacy or doctor") (emphasis added). RxLink's platform exists solely to relay cost-related information on behalf of healthcare providers and help patients access prescribed medications — not to solicit sales.

Because RxLink is a neutral third party with no commercial pitch or consumer-facing transaction, the messages cannot plausibly be construed as telephone solicitations under the statute.

---

non-participating healthcare providers are not ads when they don't promote the benefits of becoming a member or sell things to the recipient).

### C.   The Emergency Purposes Exception Further Confirms That These Messages Are Not Telephone Solicitations

The structure of the TCPA itself reinforces that the messages at issue are not "telephone solicitations." The statute and its implementing rules expressly exclude from liability calls made for "emergency purposes," defined as communications "made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4); *see also* 47 U.S.C. § 227(b)(1)(A).

The FCC has long applied that exception to prescription notifications and healthcare messages, reasoning that such communications serve significant public health purposes and are not telemarketing. *See In the Matter of the TCPA of 1991*, 7 F.C.C. Rcd. 2736, 2738 ¶ 17 (Apr. 17, 1992) ("The legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly."); 2015 Order, 30 F.C.C. Rcd. at 8031 ¶¶ 146–47 ("recogniz[ing] the exigency and public interest in calls regarding . . . prescription notifications" and granting TCPA exemption for prescription notification texts, among others).

Courts across the country have taken this same approach, holding that prescription-related messages, including when sent to reassigned numbers or unintended recipients, are not telemarketing (which makes extra sense because an unintended recipient cannot receive someone else's prescription). *See Gabertan*, 523 F. Supp. 3d at 1261 (granting motion to dismiss and finding a text message regarding "[c]urbside pick-up and mailing prescriptions" was not an advertisement or telemarketing message); *Lindenbaum*, 2018 WL 501307, at *2 (granting motion for judgment on the pleadings and holding emergency purposes exception applied to prescription notification calls made to wrong number); *Roberts*, 2016 WL 3997071, at *7–9 (calls about prescription refills "fall within the ambit of 'calls made necessary in any

situation affecting the health and safety of consumers'"); *Dennis*, 2020 WL 618472, at \*7 (messages concerning healthcare coverage qualified as emergency communications even when sent to the wrong number). Those decisions confirm a simple point: prescription-related messages are not "telephone solicitations" because they are health and safety communications, not sales efforts.

That logic applies here with even greater force. In each of the cases above, the communications at issue were sent by pharmacies or pharmacy benefit managers — the *very entities that sell or dispense prescription drugs*. Yet courts *still* found that the communications were not telemarketing because they served public health and safety interests. RxLink, by contrast, does not sell or dispense prescription drugs. *See* Compl. ¶ 16. Its role is limited to supporting healthcare providers by delivering free, informational text messages that help patients access their prescribed medications and identify ways they can *save* money. If messages from pharmacies that stand to profit from prescription sales qualify as "made for emergency purposes," then communications from RxLink — a neutral technology platform that neither sells products nor collects payment but instead seeks to make prescribed care more affordable — certainly fall within the exception.

The FCC's separate healthcare exemption confirms this outcome. Under the healthcare exemption, "[t]he FCC exempts from written consent calls to wireless cell numbers" if the call delivers a health care message "made by, or on behalf of, a 'covered entity' or its 'business associate,' as those are defined in the HIPAA Privacy Rule." *Bailey v. CVS Pharmacy*, 2018 WL 3866701, at \*4 (D.N.J. Aug. 14, 2018) (quoting *Latner v. Mount Sinai Health Sys.*, 879 F.3d 52, 54-55 (2d Cir. 2018)); *see also* 47 C.F.R. § 64.1200(a)(3)(v). "HIPAA defines health care to include 'care, services, or supplies related to the health of an

individual.'" *Id.* (quoting 45 C.F.R. § 160.103). Prescription notifications fall under the exemption. *See* 2015 Order, 30 F.C.C. Rcd. at 8031 ¶ 146.

Courts apply a three-factor test to determine whether this exemption applies: (1) the message concerns a health-related product or service; (2) it is made by or on behalf of a healthcare provider with a treatment relationship; and (3) it addresses the recipient's individual health needs. *See Zani v. Rite Aid*, 246 F. Supp. 3d 835, 851 (S.D.N.Y. 2017); *Bailey*, 2018 WL 3866701, at *4, *6. From the face of the Complaint, all three factors apply here as well: the prescriptions are health-related; the messages were directed to the numbers patients provided to their prescribing physicians; and the content concerned specific prescriptions that their physicians wrote for them. *See* Compl. ¶ 22.

Moreover, the FCC has acknowledged that the emergency and healthcare exemptions operate in tandem, noting there is "effectively no gap" between the two. *ACA Int'l v. FCC*, No. 15-1211, 2016 WL 194146, Brief for Respondent at *71–72 (noting that "Rite Aid has not identified any HIPAA-covered healthcare calls that would fall within the statutory exception for calls made for an emergency purpose, but outside the Omnibus Ruling's [healthcare] exemption. . . . Should such calls arise, parties can rely on the emergency-purposes exception on a case-by-case basis.").

The court's decision in *Guglielmo v. CVS Pharmacy* underscores this conclusion. 2021 WL 3291532 (D. Conn. Aug. 2, 2021). The plaintiff in *Guglielmo* alleged that he received texts for prescriptions of his father, in violation of the TCPA. *Id.* at *1. The plaintiff argued that the prescription refill messages were advertisements because they might ultimately lead to a sale. *Id.* at *2. The court rejected that theory, explaining that "simply because a communication ultimately results in a sale of goods does not always make it an advertisement, particularly if

18

the communication regards the subject of healthcare." *Id.* The court granted the defendant's motion to dismiss and held that even if sent to the wrong person, the messages were exempt under the TCPA's healthcare exception. *Id.* (citing *Jackson v. Safeway*, 2016 WL 5907917, at *5 (N.D. Cal. Oct. 11, 2016)).

So too here. RxLink's messages — automatically triggered by a provider's prescription — simply shared cost-saving information to help patients obtain essential medication. And unlike *Guglielmo*, where the messages came directly from a pharmacy, RxLink is a third-party "healthcare [] platform" that does not sell the prescriptions about which it messages. *See* Compl. ¶ 16. That fact only reinforces that these messages were sent for a healthcare purpose and not a commercial one.

Because Plaintiff's claim is based entirely on messages that were sent for a healthcare purpose, the Court should find that the messages are not "telephone solicitations" under § 227(c). Moreover, because this defect is clear from the face of the Complaint, any amendment would be futile. *See Bailey*, 2018 WL 3866701, at *8 (finding amendment of a complaint dismissed under the healthcare exemption would be futile).

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and dismiss the Complaint with prejudice.

[*Signature on Following Page*]

19

Dated: October 14, 2025

Respectfully submitted,

*/s/ Matthew A. Lipman*

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Matthew A. Lipman
mlipman@mdmc-law.com
1617 JFK Boulevard, Ste. 1500
Philadelphia, Pennsylvania 19103
Telephone: 215-557-2900
Fax: (215) 557-2990

**WATSTEIN TEREPKA, LLP**
Ryan D. Watstein*
GA 266019
ryan@wtlaw.com
Oyinkansola Y. Muraina*
GA 357962
omuraina@wtlaw.com
75 14th Street NE, Ste. 2600
Atlanta, Georgia 30309
Telephone: (404) 779-5189
Fax: (404) 537-1650
*Pro hac vice* forthcoming

*Counsel for Defendant RxLink Inc.*

## <u>LOCAL RULE 7.1(b) CONFERENCE</u>

Pursuant to Local Rule 7.1(b), counsel for Defendant certifies that Defendant conferred with Plaintiff's counsel via email on October 14, 2025, regarding this motion. Plaintiff's counsel advised that Plaintiff does not oppose the relief requested herein.

**<u>McELROY, DEUTSCH, MULVANEY &amp;<br>CARPENTER, LLP</u>**

<u>*/s/ Matthew A. Lipman*</u><br>Matthew A. Lipman<br>*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/CEF system, which will send a notice of electronic filing to all counsel of record.

<u>*/s/ Matthew A. Lipman*    </u>
Matthew A. Lipman
*Counsel for Defendant*
