IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOUREY NEWELL,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**RXLINK INC.**<br><br>*Defendant*. | Case No.<br><br>2:25-cv-4270-MRP<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SUR-REPLY TO
DEFENDANT'S MOTION TO DISMISS**

**I.     *DILANYAN* SUPPORTS PLAINTIFF'S POSITION**

Defendant's Reply selectively cites *Dilanyan v. Hugo Boss Fashions, Inc.* to suggest that a district court "declined to extend *Satterfield* to a § 227(c) claim and instead certified the question for immediate interlocutory review." (Reply at 6.) That characterization is misleading. The *Dilanyan* court *denied* the defendant's motion to dismiss, holding that "*Satterfield*'s conclusion that 'a text message is a "call" within the meaning of the TCPA' appears to be broad enough to control here" and that "Plaintiff is entitled to bring an action under § 227(c)(5)." *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549868, at *3 (C.D. Cal. Dec. 3, 2025).

The *Dilanyan* court's separate decision to certify the question for interlocutory review is irrelevant here (*Satterfield* is not binding) and does not undermine the fact that the Court held *for the Plaintiff* at the motion to dismiss stage. *Dilanyan* thus confirms that this case should not be dismissed, and because there's no apparent tension between the arguments here and binding

1

Third Circuit authority, there is nothing to certify for interlocutory review. Certification under 28 U.S.C. § 1292(b) requires a "substantial ground for difference of opinion," which exists precisely *because* binding precedent controls. The court certified the question because *Satterfield* was binding, in light of the argument seeking to revisit that precedent in light of *Loper Bright*. Disagreement about whether to revisit binding authority is not the same as disagreement about whether it controls at the time. On that question, the *Dilanyan* court was unequivocal that it does.

Defendant now disclaims any request for interlocutory review. (Opp. to Mot. for Leave at 2.) But Defendant's Reply cited *Dilanyan* exclusively for its interlocutory review proposition, stating that the court "certified the question for immediate interlocutory review." The Reply never quoted *Dilanyan*'s core holding, which sided with the plaintiff. Whether Defendant intended to invite interlocutory review of some heretofore unidentified case or merely borrow *Dilanyan*'s reasoning, the result is the same. *Dilanyan* supports Plaintiff, not Defendant.

## II.    DEFENDANT'S OWN DICTIONARY SUPPORTS PLAINTIFF

Defendant's Reply introduces new dictionary definitions from the Oxford Encyclopedic English Dictionary that did not appear in its Motion in Chief. (Reply at 6 n.2.) Defendant argues this is permissible because "[c]ourts have held that a reply may cite additional dictionary sources." Opp. to Mot. for Leave at 3-4 (citing *Red Barn Motors, Inc. v. NextGear Cap., Inc.*, 2017 WL 5178274, at *2 (S.D. Ind. Mar. 27, 2017)). But *Red Barn* is distinguishable. There, the court found the defendant's reliance on Black's Law Dictionary "did not inject new evidence, arguments, or issues" because the definition was responsive to plaintiff's opposition. *Id.* Here, by contrast, Defendant's statutory-interpretation argument in its Motion in Chief turned on specific dictionaries of its own choosing. When those proved insufficient, Defendant introduced new

2

ones on reply to reinforce its proposition that a "telephone" must use sound. But that is improper dictionary shopping, not rebuttal using existing authorities already contained in its own motion.

Regardless, Defendant's newly cited dictionary undercuts its own argument. The Oxford Encyclopedic English Dictionary defines a "telephone call" as a "call," and defines "call" as "to communicate or converse with by telephone or radio." *See* "call," Oxford Encyclopedic English Dictionary 209 (2d ed. 1991). Under that definition, a "telephone call" is simply a communication made *by telephone*, which plainly includes text messages sent from one telephone to another. It indicates no preference for voice communication. Defendant's own authority thus supports the conclusion that a text message is a "telephone call" within the meaning of § 227(c)(5). Relatedly, Defendant ignores the additional definitions of "telephone" present in its own citation to include "a system of communication using a network of telephones" and to "send (a message) by telephone." *Id.* 1484. These definitions reinforce the understanding that, even in 1991, a "telephone call" need only transmit a "message," not include a vocal component. Fax machines, pagers, teletype machines,[1] and TTY devices are all examples of technologies available in 1991 that transmitted text-based "messages" under that definition.

### III.     THE FCC'S REGULATIONS IMPLEMENT, NOT EXPAND, THE STATUTE

Defendant contends that the FCC's regulations "cannot expand" the scope of § 227(c)(5)'s private right of action. (citing *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)). That argument attacks a strawman. Plaintiff does not contend that the FCC created or expanded the TCPA's congressionally authorized private right of action through the regulation it enacted at

---

[1] For those not old enough to remember, a teletype machine is essentially a typewriter that is hooked into a telephone line. Up until 2020, KYW Newsradio 1060 played teletype background sounds on its newsroom broadcasts. They still exist in the form of teleprinters and TTY/TTD devices, which are used by hearing impaired individuals to convert and send voice calls into text and vice-versa.

47 C.F.R. § 64.1200(e). Rather, Congress created the private right of action in § 227(c)(5) and authorized rulemaking to protect consumer privacy in § 227(c)(1) and (2). The question is whether the instant regulation, which makes clear that the regulations promulgated by the FCC pursuant to that Congressionally authorized mandate, furthers both consumer privacy interests and falls within the purview of a "telephone call," as Congress authorized. As explained above, a reasonable interpretation of the term "telephone call," even as that term was understood in 1991, is that it applies equally to text-based and voice-based communications transmitted through telephones. Moreover, understanding that term to include both text-based and voice-based communications furthers consumer privacy because it would be absurd to deny deaf people, for example, recovery under the TCPA, simply because they received telephone calls as written text.

So, it is evident that the FCC's regulation making clear that the TCPA's regulations apply to "telemarketing calls or text messages" in 47 C.F.R. § 64.1200(e) does not exceed Congressionally-authorized authority. Congress expressly authorized suits for violations of the implementing regulations in § 227(c)(5). And those implementing regulations properly and reasonably operationalize a statutory framework Congress enacted. Defendant's contention that the FCC exceeded the scope of the conduct Congress authorized is wrong as a textual matter.

IV.     **WHETHER THE MESSAGES ARE SOLICITATIONS IS A FACTUAL DISPUTE**

Defendant's Reply confirms that whether the messages constitute "telephone solicitations" turns on factual questions that cannot be resolved at the pleading stage. The TCPA defines a "telephone solicitation" as a call or message made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). Plaintiff alleges that Defendant's messages encouraged recipients to use RxLink's prescription discount card service to receive discounts on prescription drugs, facts which are evident from the

4

text of the calls themselves. Defendant disputes Plaintiff's characterization of how its service operates and how RxLink derives revenue from recipients' use of it. (Reply at 9-11.) Defendant's own opposition to the motion for leave acknowledges that "[e]xposing such contradictions is core Rule 12(b)(6) analysis." But that disagreement underscores the fact that whether a call was a "telephone solicitation" depends on a factual analysis of the purpose of the messages and the nature of Defendant's business model. Defendant's argument is self-defeating since it only highlights a factual dispute that the Court cannot consider at the pleadings stage.

Relatedly, Defendant accuses Plaintiff of conducting a "post-hoc amendment" to his Complaint in opposition to the motion by referencing Defendant's website. (Reply at 11 (citing *Knopick v. UBS Fin. Servs., Inc.*, 121 F. Supp. 3d 444, 461 (E.D. Pa. 2015)).) But Plaintiff does not add new claims or change the Complaint's factual predicate. Rather, Plaintiff draws reasonable inferences from judicially noticeable facts, including Defendant's own public website, which was referenced in the text messages. These are proper subjects of judicial notice. *See Melleady v. Blake*, No. CIV. 11-1807 NLH/KMW, 2011 WL 6303245, at *17 n.34 (D.N.J. Dec. 15, 2011) (holding a court may consider both matters of public record and documents integral or explicitly relied upon in the complaint without converting the motion into one for summary judgment); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (holding that the "nature of [a defendant's] business" is the proper subject of a request for judicial notice from a business website, so long as additional facts are not inferred therefrom).

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.[2]

---

[2] Plaintiff briefly clarifies the filing date of his Opposition. The parties stipulated that Plaintiff's Opposition would be due on November 27, 2025. (ECF No. 20.) Because November 27 was Thanksgiving, Plaintiff calendared the deadline for November 28, consistent with Fed. R. Civ. P. 6(a)(1)(C). The Court's Order granting the stipulation stated the due date was November 24, 2025, a date which preceded the stipulated deadline. (ECF No. 21.) Plaintiff understood this to be a clerical error and filed in good faith on November 28, in accordance with the parties' stipulation.

Dated: January 9, 2026

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.
>Perrong Law LLC
>2657 Mount Carmel Avenue
>Glenside, Pennsylvania 19038
>Phone: 215-225-5529 (CALL-LAW)
>Facsimile: 888-329-0305
>a@perronglaw.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

January 9, 2026

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.

6