**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JACOB HOWARD, for himself and on behalf of all others similarly situated, | No. 23-3826 |
| *Plaintiff-Appellant*, | D.C. No. 2:23-cv-00993-SPL |
| v. | |
| REPUBLICAN NATIONAL COMMITTEE, a Political Action Committee, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Arizona
Steven P. Logan, District Judge, Presiding

Argued and Submitted September 11, 2024
Phoenix, Arizona

Filed January 13, 2026

Before: Johnnie B. Rawlinson and Daniel P. Collins,
Circuit Judges, and Sidney A. Fitzwater, District Judge.[*]

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

Opinion by Judge Collins;
Dissent by Judge Rawlinson

## **SUMMARY**[**]

### **Telephone Consumer Protection Act**

Affirming the district court's dismissal, for failure to state a claim, of a putative class action, the panel held that the Telephone Consumer Protection Act does not prohibit, absent prior express consent, the sending of text messages containing video files.

The TCPA generally makes it unlawful, absent the "prior express consent of the called party," (1) "to make any call . . . using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service; or (2) "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message." *See* 47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B). By its plain terms, the statutory text in § 227(b)(1)(A)(iii) and § 227(b)(1)(B) only reaches the use of prerecorded voices in the manner in which a call is begun. Although the text message at issue in this case contained a video file, the recipient of the text message had to affirmatively act, after receiving the message, to choose to listen to the video. Because the resulting "call" was made and initiated without the playing of a prerecorded voice, it did not violate these provisions.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Rawlinson disagreed with majority's conclusion that the text message sent in this case, which included a video file, did not come within the protections of the TCPA.

---

## COUNSEL

Jon L. Phelps (argued), Phelps & Moore PLLC, Scottsdale, Arizona; Shannon A. Lindner, Shannon Lindner Law PLLC, Phoenix, Arizona; for Plaintiff-Appellant.

Dallin B. Holt (argued), Drew C. Ensign, and Brennan A.R. Bowen, Holtzman Vogel Baran Torchinsky & Josefiak PLLC, Phoenix, Arizona; Jonathan Lienhard, Holtzman Vogel Baran Torchinsky & Josefiak PLLC, Haymarket, Virginia; for Defendant-Appellee.

Megan Iorio and Chris Frascella, Electronic Privacy Information Center, Washington, D.C., for Amici Curiae Electronic Privacy Information Center and the National Consumer Law Center.

## OPINION

COLLINS, Circuit Judge:

As relevant here, § 227 of the Communications Act of 1934, as added by the Telephone Consumer Protection Act of 1991 ("TCPA"), generally makes it unlawful, absent the "prior express consent of the called party," (1) "to make any call . . . using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service," 47 U.S.C. § 227(b)(1)(A)(iii); or (2) "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message," *id*. § 227(b)(1)(B).[1]   As stated in the TCPA itself, these provisions were aimed at eliminating the "nuisance" and "invasion of privacy" associated with answering a call only to hear a "prerecorded" voice rather than a live person. *See* TCPA, Pub. L. No. 102-243, § 2(10), 47 U.S.C. § 227 *note*. The question presented in this case is whether these provisions should be construed to also prohibit, absent prior express consent, the sending of text messages containing video files, even when the recipient must affirmatively act, after receiving the message, to choose to listen to the video. Because such a reading of the TCPA would be inconsistent with the statutory text, we affirm the district court's judgment dismissing the complaint in this case.

---

[1] Although the TCPA was a 1991 statute that added § 227 to the Communications Act, and although subsequent amendments to § 227 are therefore amendments to the Communications Act and not to the "TCPA" itself, *see*, *e.g.*, Pub. L. No. 116-105, § 3(a), 133 Stat. 3274, 3274 (2019), it has become customary to refer to § 227, even in its current form, as the "TCPA." We will follow the same practice here.

# I

## A

Because the district court dismissed Howard's lawsuit under Federal Rule of Civil Procedure 12(b)(6), we must take as true the complaint's well-pleaded factual allegations and draw all reasonable inferences in favor of Howard. *See Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022). Under those standards, we assume the following facts to be true for purposes of this appeal.

Howard is a resident of Arizona, and his personal cell phone serves as his residential telephone line. On October 24, 2020, during the final weeks of the presidential election campaign, the Republican National Committee ("RNC") "placed, or caused to be placed, an automated text message to Howard's cellular telephone number." The text message, which purported to relay a message from President Trump's daughter Ivanka, consisted of written text, together with an accompanying video file. The written portion of the text message, which consisted of a few sentences and a URL link, was as follows:

> Ivanka's message...
>
> We're in the fight for the future of our Country. It all depends on your VOTE. Find your Early Voting location NOW:
>
> earlyvote.us/gDasyFs_s

The text message's accompanying video file "was automatically downloaded to Howard's phone." The video appeared above the written words of the text message as a still-image thumbnail of Ivanka Trump, with a play button overlaid on the image. *See generally United States v. Arce*,

49 F.4th 382, 388 n.4 (4th Cir. 2022) ("A thumbnail is a reduced-size version of a frame in a video."). As depicted in the complaint, the text message and accompanying video file appeared as follows on Howard's phone:



Howard alleges that the video "contained an artificial or prerecorded voice."

Although the video downloaded automatically onto Howard's phone, Howard does not allege that the video *played* automatically. On the contrary, Howard conceded at oral argument that a recipient of this text message must tap the play button or the still-image thumbnail to play the video. *Cf. United States v. Frommelt*, 971 F.3d 823, 828 (8th Cir. 2020) (summarizing testimony that a video sent as a message on Facebook was shown as a thumbnail with a play button overlaid and started playing only after the play button was clicked).

Howard considered the text message to be an invasion of his privacy. The message was "unsolicited," and at no point had Howard "provide[d] [the RNC] with his express consent to be contacted by telephone using an artificial or prerecorded voice." "It is unknown how [the RNC] obtained [Howard's] Number." The complaint further alleged, on information and belief, that the text message sent to Howard was part of a broader campaign targeting Arizona residents.

**B**

Howard filed this putative class action, asserting two statutory claims under § 227(b)(3)'s private right of action. *See* 47 U.S.C. § 227(b)(3) (providing a private right of action for violations of § 227(b)); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (holding that "federal and state courts have concurrent jurisdiction over private suits arising under the TCPA"). Specifically, Howard alleged that the RNC's unsolicited text message to him violated both § 227(b)(1)(A)(iii)'s general prohibition on "mak[ing] any call" to a cellular telephone number "using . . . an artificial or prerecorded voice" and § 227(b)(1)(B)'s general prohibition on "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice." 47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B). These claims were asserted on behalf of a putative class generally consisting of all persons in the United States who within the last four years received, without prior consent, a text message from the RNC with "an artificial or prerecorded voice in a video." For each cause of action, Howard sought, pursuant to § 227(b)(3), "a permanent injunction against future calls or text messages" and a minimum of $500.00 in statutory damages for each violation.

The district court granted the RNC's motion to dismiss Howard's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).    The court held that, because the recipient of the challenged text message "had to actively press play . . . to watch" the accompanying video, the RNC had not "ma[d]e a call" using a prerecorded voice in violation of § 227(b)(1)(A).  The court also stated, without further analysis, that the same conclusion also applied to Howard's claim of a violation of § 227(b)(1)(B).

The court also held that Howard's claim under § 227(b)(1)(B) failed for the alternative reason that the challenged text message fell within a regulatory exemption from § 227(b)(1)(B)'s coverage.    *See* 47 U.S.C. § 227(b)(2)(B) (authorizing the Federal Communications Commission ("FCC") to "exempt," "by rule or order," certain categories of calls "from the requirements of paragraph (1)(B) of this subsection"); *see also id*. § 227(b)(1)(B) (stating that the prohibitions of § 227(b)(1)(B) apply "unless," *inter alia*, the call "is exempted" by the FCC under § 227(b)(2)(B)).  Specifically, the district court held that Howard's § 227(b)(1)(B) claim was barred by a regulation generally exempting from that provision calls "made by or on behalf of a tax-exempt nonprofit organization [if] the caller makes no more than three calls within any consecutive 30-day period to the residential line and honors the called party's request to opt out of future calls."  47 C.F.R. § 64.1200(a)(3)(iv).

The court dismissed Howard's complaint with prejudice and without leave to amend, concluding that the foregoing deficiencies in Howard's claims could not be cured by the allegation of any additional facts.

Howard timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the district court's dismissal under Rule 12(b)(6). *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

## II

### A

In addressing whether the relevant prohibitions in § 227 apply to the challenged text message at issue here, we begin, as in all questions of statutory construction, "with the text of the statute." *See Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023).

Section 227(b)(1) provides, in relevant part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>
>>> . . . .
>>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for

> which the called party is charged for
> the call . . . ; [or]
>
> (B) to initiate any telephone call to
> any residential telephone line using an
> artificial or prerecorded voice to deliver a
> message without the prior express
> consent of the called party, unless the call
> is initiated for emergency purposes . . . or
> is exempted by rule or order by the
> [Federal Communications] Commission
> . . . .

47 U.S.C. § 227(b)(1).

By their terms, the two relevant subsections—
§ 227(b)(1)(A)(iii) and § 227(b)(1)(B)—impose comparable
prohibitions on using "an artificial or prerecorded voice" to
make calls, respectively, to a "cellular telephone" number
and to a "residential telephone line."**2**    Specifically,
§ 227(b)(1)(A)(iii) generally makes it unlawful (1) "to make
any call" (2) "to any telephone number assigned to a . . .
cellular telephone service" (3) "using . . . an artificial or
prerecorded voice," and § 227(b)(1)(B) generally makes it
unlawful (1) "to initiate any telephone call" (2) "to any
residential telephone line" (3) "using an artificial or
prerecorded voice to deliver a message."    47 U.S.C.

---

[2] Section 227(b)(1)(A)(iii)'s text also separately prohibits "mak[ing] any
call . . . using any automatic telephone dialing system . . . to any
telephone number assigned to a . . . cellular telephone service." 47
U.S.C. § 227(b)(1)(A)(iii); *see*, *e.g.*, *Facebook, Inc. v. Duguid*, 592 U.S.
395, 402 (2021) (addressing claim that a particular system used by
Facebook to send text messages used an "automatic telephone dialing
system" that violated § 227(b)(1)(A)). That theory of liability, however,
is not at issue in this case.

§§ 227(b)(1)(A)(iii), 227(b)(1)(B).    The parties do not dispute that, for purposes of these provisions, the challenged text message was sent "to a[] telephone number assigned to a . . . cellular telephone service" and that that cell phone number also qualifies as a "residential telephone line." *Id*. The key question, then, is whether the sending of this text message involved (1) "mak[ing] a[] call" or "initiat[ing] a[] telephone call" to that phone number, (2) "using an artificial or prerecorded voice." *Id*.

**B**

Before addressing the meaning of the quoted statutory language as a whole, we first summarize our prior caselaw expounding on the meaning of two important constituent terms, namely "call" and "voice."

We have previously held that, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), it was "reasonable" to defer to the FCC's conclusion that the term "call" in § 227 includes a "text message." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("*Chevron* is overruled."). *Satterfield* emphasized two key points about statutory construction that supported the FCC's understanding of a "call," *see Satterfield*, 569 F.3d at 953–54, and even under de novo review, those same two points support the conclusion that a "text message" constitutes a "call" within the meaning of the TCPA.

First, *Satterfield* held that, in accordance with its "plain and ordinary meaning[]" in this context, the statutory term "'call' . . . refer[s] to an attempt to communicate by telephone." *Satterfield*, 569 F.3d at 953 n.3; *see also Call*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 318 (1981 ed.) (hereinafter "WEBSTER'S THIRD") (stating that a "call" means a "communicat[ion] with or [an attempt] to get in communication with a person by telephone").   Text messaging plainly fits within that literal definition of a "call," because "text messaging is a form of communication used primarily between telephones." *Satterfield*, 569 F.3d at 954.

Second, *Satterfield* also noted, *see id*., that treating a text message as a "call" was consistent with the statute's declared purpose "to protect" "privacy rights," 47 U.S.C. § 227(b)(2)(B)(ii)(I); *id*. § 227(b)(2)(C) (same).   *See also Los Angeles Lakers, Inc. v. Federal Ins. Co.*, 869 F.3d 795, 803 (9th Cir. 2017) (holding that, in light of the declared purpose stated in § 227(b)(2)(B)(ii)(I) and § 227(b)(2)(C), "the purpose of the TCPA is to protect privacy rights and privacy rights alone").   At issue in *Satterfield* were written text messages allegedly sent using an automatic telephone dialing system (as opposed to a "prerecorded voice") in violation of § 227(b)(1)(A).   *See Satterfield*, 569 F.3d at 949–50; *see also supra* note 2 (referencing that distinct prohibition against using automatic telephone dialing systems).   Given how text messaging typically works as used on individuals' phones, an arriving auto-dialed text message (unlike, for example, an arriving email) usually results in an immediate intrusion in the form of a display of a preview of the text on the phone's screen (even if locked), a sound, a

vibration, or some combination of those.[3]  Consequently, the sort of auto-dialed text messages at issue in *Satterfield* will typically produce the particular type of intrusion on privacy at which the statute is aimed, which is an intrusion upon "seclusion." *Los Angeles Lakers*, 869 F.3d at 806; *see also Yahoo! Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 913 F.3d 923, 925 (9th Cir. 2019) (noting that "[c]ourts have consistently held the TCPA protects a species of privacy interest in the sense of seclusion," "such as where the insured's unsolicited advertising message disturbs the recipient's privacy" (citation omitted)).  In other words, an auto-dialed text message to a phone number thus frequently entails an immediate intrusion on privacy comparable to that associated with the ring of an incoming auto-dialed phone call.   That critical fact confirms that a text message is properly deemed to be a "call" within the meaning of the TCPA.  *See* ANTONIN SCALIA AND BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 57 (2012) (noting that the "purpose" disclosed by the statutory text "sheds light only on deciding which of various *textually permissible meanings* should be adopted").

We later addressed the meaning of the TCPA's use of the term "voice" in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023).  In *Trim*, the plaintiff contended that unwanted text messages that she received on her cell phone and that consisted of words and an accompanying link to a website "constituted 'prerecorded voice messages'" and

---

[3] The mere fact that a phone can be set to shut off notifications for text messages does not mean that text messages do not, as a class, fall within the ordinary understanding of a potentially privacy-intruding "call."  A classic telephone call, which typically results in ringing of the phone, remains a "call" even if the particular user has his or her ringer turned off.

were therefore prohibited by § 227(b)(1)(A)(iii). *Id*. at 1159. In making this assertion, the plaintiff argued that the term "voice" broadly included any "instrument or medium of expression," including ones that did not use sound. *Id*. We disagreed, holding that, for two reasons, "Congress clearly intended 'voice' in 47 U.S.C. § 227(b)(1)(A) to encompass only audible sounds." *Id*. at 1161.

First, we noted that contemporary dictionaries confirmed that "[t]he ordinary meaning of 'voice' when the TCPA was enacted was a '[s]ound formed in or emitted from the human larynx in speaking.'" *Trim*, 76 F.4th at 1162 (quoting *Voice*, OXFORD ENGLISH DICTIONARY (2d ed. 1989)) (additional citations omitted).   Although "voice" also could have a broader meaning that includes more symbolic or poetic uses (as in, for example, phrases such as "the party [that] became the voice of the workers"), we noted that the fact "that a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Id*. (simplified).   Because there was no indication that Congress intended to adopt any such "idiosyncratic definition," we concluded that "Congress intended to legislate the primary meaning of voice, which requires an audible component." *Id*. (citation omitted).

Second, we held that the "context of the statute" confirmed that the plaintiff was wrong in arguing, in effect, that every text message involved the use of a "voice." *Trim*, 76 F.4th at 1162.  We pointed to another subsection of § 227 that regulated use of "caller identification information" and that expressly defined that phrase to include identifying information concerning both "a call made using a voice service or a text message sent using a text message service." *Id*. (quoting 47 U.S.C. § 227(e)(8)(A)).  Under the plaintiff's overbroad reading of "voice," we concluded, all text

messages would already be covered by the phrase "call made using a voice service," thereby rendering the additional language concerning "text messages" as surplusage. *Id*. We also rejected the plaintiff's converse surplusage argument that, under a narrower reading of "voice," a text message could *never* be said to use a "prerecorded voice." *Id*. at 1162–63. That was wrong, we held, because "a 'text' call could come via MMS (Multimedia Messaging Service), which could include audio sound with an artificial or prerecorded voice." *Id*. at 1163 n.4; *see generally United States v. Palms*, 21 F.4th 689, 695 n.5 (10th Cir. 2021) (explaining that "MMS is an acronym for multimedia message service and refers to text messages combined with pictures, video, or sound files," in contrast to SMS, which "stands for short messaging service . . . and is a system that allows cell phones to send and receive short text m[e]ssages").

**C**

Against this backdrop, we conclude that Howard's complaint failed to state a claim under either § 227(b)(1)(A)(iii) or § 227(b)(1)(B). Although the RNC's text message was a "call" and *contained* a video file with an artificial or prerecorded "voice" within the meaning of those subsections, Howard has not alleged that the RNC "*ma[d]e*" or "*initiate[d]*" that "call" "*using*" the artificial or prerecorded voice, as required to state a claim under the subsections. 47 U.S.C. §§ 227(b)(1)(A), 227(b)(1)(B) (emphasis added).

As relevant here, § 227(b)(1)(A) makes it unlawful "to *make* any call . . . *using* . . . an artificial or prerecorded voice," and § 227(b)(1)(B) makes it unlawful "to *initiate* any telephone call . . . *using* an artificial or prerecorded voice to

deliver a message." 47 U.S.C. §§ 227(b)(1)(A), 227(b)(1)
(B) (emphasis added). Construed in accordance with their
ordinary meaning, the words "make" or "initiate," when
used with reference to a "call," refer to the manner in which
a call to a telephone is *begun*. *See Make*, WEBSTER'S THIRD,
*supra*, at 1363 (defining "make" to mean "to cause to exist,
occur, or appear : bring to pass : create, cause"); *Initiate*,
WEBSTER'S THIRD, *supra*, at 1164 (defining "initiate" as "to
begin or set going : make a beginning of : perform or
facilitate the first actions, steps, or stages of"). Because the
identical phrase "using an artificial or prerecorded voice" in
each subsection respectively modifies the verbs "make" and
"initiate," those provisions only limit the use of artificial or
prerecorded voices to *begin* a call.[4]

The line drawn by this plain-language reading also
coheres with the declared purpose of the statute, which is to
prevent the intrusion upon seclusion associated with
answering a "call" only to be subjected to the nuisance of
hearing an artificial or prerecorded voice rather than the
voice of a live person.[5] A call that is *begun* with an artificial

---

[4] Because this construction follows from the TCPA's plain language, the
dissent is quite wrong in claiming that we have somehow added to the
statutory text. *See* Dissent at 25–29. Rather, it is the dissent that has
disregarded the TCPA's text by ignoring the import of the critical
statutory language stating that the "us[e]" of the prerecorded voice must
be tied to the "mak[ing]" or "initiat[ing]" of the call.

[5] As explained in the formal findings contained in the text of the TCPA,
the "[e]vidence compiled by the Congress indicates that residential
telephone subscribers consider automated or prerecorded telephone
calls, regardless of the content or the initiator of the message, to be a
nuisance and an invasion of privacy." TCPA, Pub. L. No. 102-243,
§ 2(10), 47 U.S.C. § 227 *note*. Congress therefore "[b]ann[ed] such
automated or prerecorded telephone calls to the home, except when the

or prerecorded voice directly implicates that privacy interest, because the person called, upon being reached, is immediately and involuntarily subjected to the nuisance of listening to an artificial or prerecorded voice. Likewise, a voicemail message that consists of a prerecorded robocall, rather than a recording of a live speaker contemporaneously leaving a message, intrudes on the recipient's privacy as soon as he or she plays back the message and is subjected to listening to an entirely *pre*recorded voicemail message. *See Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 7 F.4th 1232, 1233–34 (9th Cir. 2021).[6]  By contrast, if the caller is a live

---

receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer." *Id*. § 2(12). Congress likewise found that "[b]usinesses," and not merely residential subscribers, also had complained "that automated or prerecorded telephone calls are a nuisance," *id*. § 2(14), and the prohibition contained in § 227(b)(1)(A) therefore extended beyond the residential telephone lines covered by § 227(b)(1)(B).

[6] Contrary to what the dissent wrongly contends, *see* Dissent at 30 n.5, *Loyhayem* had no occasion to address the question presented here, which is whether § 227(b)(1)(A)(iii) applies to the sending of a text message that includes a video file that is playable only if the recipient affirmatively elects to view it. In *Loyhayem*, the district court had held that, when construed in light of its implementing regulations, the TCPA's prohibition on using automatic dialing systems or prerecorded voices to make calls to cell phones does not apply unless the content of the message involves an "advertisement" or "telemarketing." 7 F.4th at 1234.  We rejected this interpretation of the TCPA as lacking any basis in the statutory text, which applies to calls made in the prohibited manner "regardless of content." *Id*.  The question here, by contrast, is not whether the call involved any particular type of subject matter; rather, it is whether the challenged call was "ma[d]e" in the manner that the TCPA prohibits in the first place. 47 U.S.C. § 227(b)(1)(A)(iii).  And the dissent's further insinuation that the Supreme Court supposedly addressed this question in *Facebook* is demonstrably incorrect:

person, and, *after* the call is begun with the recipient, the
caller then asks the recipient if he or she is willing to listen
to a prerecorded message or is willing to complete an
automated survey, there is no sense in which *that* "use" of
an automated or prerecorded voice implicates the same
privacy interest.  In the language of the statute, such a call
was not "ma[d]e" or "initiate[d]" by use of an automated or
prerecorded voice, and such a call neither falls within the
statute's text nor implicates its declared purpose.

The dissent's broader reading of § 227(b)(1)(A)(iii) and
§ 227(b)(1)(B) would lead to anomalous, if not absurd,
results.  For example, if these provisions were construed (as
the dissent would have it) to reach any use of an automated
or prerecorded voice *during* a call (as opposing to use in
making or initiating the call), that would potentially prohibit
the common practice of on-hold messaging, in which
prerecorded informational messages are played for
individuals while they are on hold.  *See generally Info-Hold,
Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 451 (6th Cir. 2008)
(describing on-hold messaging).  But a business
representative who makes or initiates a live call and then
later, to assist the call recipient, places the recipient on hold,
thereby resulting in prerecorded messages being heard,
plainly does not violate § 227(b)(1)(A)(iii) or
§ 227(b)(1)(B).  In such a case, the representative has not
"ma[d]e" or "initiate[d]" a call "using" a prerecorded voice.
47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B).  Moreover, the

---

*Facebook* involved § 227(b)(1)(A)'s distinct prohibition on using
automatic telephone dialing systems, and the Court's passing
observation that the TCPA also prohibits "'artificial or prerecorded
voice' calls," *see Facebook*, 592 U.S. at 408 n.8, says nothing about
whether the inclusion of an unplayed video file in a text message counts
as "using" a prerecorded voice to "make" or "initiate" a call.

dissent's flawed reading of the provisions as prohibiting *any* "use" of prerecorded voices *during* a call would prohibit playing recorded music while on hold, but only if the music has *vocals*. The notion that Congress sought to draw any such line in these provisions is absurd.[7]

Because § 227(b)(1)(A)(iii) and § 227(b)(1)(B) thus regulate only the manner in which a call is made or initiated, Howard has failed to state a claim under either provision. The call at issue here—the text message and accompanying video file—*included* an artificial or prerecorded voice. *See Trim*, 76 F.4th at 1163 n.4 (recognizing that a text message "could *include* audio sound with an artificial or prerecorded voice" (emphasis added)). But like a telephone call in which a live caller offers to play an artificial or prerecorded voice to the recipient, the RNC's text message was made or initiated by its textual content and its *silent* inclusion of a ready-to-play video file. As Howard conceded at argument, he would only hear the prerecorded voice in the video file if he *chose* to tap the thumbnail and play the file. The text message therefore communicated to Howard a textual statement and the option to play what the thumbnail disclosed was a video recording made by Ivanka Trump. Because Howard's voluntary engagement with the video file was a necessary intervening action between the RNC's initial contact and the playing of the video's artificial or

---

[7] Indeed, the dissent's atextual reading of the TCPA would make it presumptively unlawful to *ever* put video files in text messages absent "prior express consent of the called party." 47 U.S.C. §§ 227(b)(1)(A), 227(b)(1)(B). Depending upon how broadly or narrowly the "prior express consent" exception is read, *see Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043–46 (9th Cir. 2017) (discussing the scope of "consent" under the TCPA and its implementing regulations), such a sweeping reading of the provisions could potentially raise serious First Amendment issues.

prerecorded voice, any subsequent playing and hearing of the prerecorded voice in the video file is not included within the means by which the RNC made or initiated the "call." Under these circumstances, the "call" at issue in the RNC's text message was not "ma[d]e" or "initiat[ed]" using an artificial or prerecorded voice, and it therefore did not violate § 227(b)(1)(A)(iii) or § 227(b)(1)(B).[8]

### III

For the foregoing reasons, we conclude that the relevant language in § 227(b)(1)(A)(iii) and § 227(b)(1)(B) only reaches the use of prerecorded voices in the manner in which a call is begun. Because the text message at issue here was made and initiated without the playing of a prerecorded voice, it did not violate these provisions. We therefore affirm the district court's order dismissing the complaint for failure to state a claim on which relief can be granted.

**AFFIRMED.**

---

[8] We recognize that an individual's phone settings could conceivably be changed so that, upon viewing a text message containing certain video files, the file would automatically begin to play. That would not change the ultimate result here. There are no allegations in the complaint that use of such an auto-viewing setting is sufficiently widespread that it would be expected by a sender (and thus arguably understood to be part of the typical process for "initiating" or "making" the call). Moreover, anyone who sets his or her phone so that it plays all incoming video files *automatically* has plainly given "prior express consent" to listening to the prerecorded voices on any such video files that may be received. 47 U.S.C. §§ 227(b)(1)(A), 227(b)(1)(B).

Rawlinson, Circuit Judge, dissenting:

I respectfully dissent from my colleagues' conclusion that the text message sent in this case, which included a video file, did not come within the protections of the Telephone Consumer Protection Act of 1991 (TCPA).

As the majority acknowledges, the video file in this case was not sent separately to Howard's telephone. Rather, it was "automatically downloaded onto Howard's phone" as a visual image that accompanied the text message. *Majority Opinion*, p. 6. So the video file was sent contemporaneously with the text message. But, the majority inexplicably parses the language of the statute to conclude that the call made to Howard by way of a text message[1] did not fall within the provisions of Section 227 of the TCPA.

Section 227(b)(1) of the TCPA provides in pertinent part:[2]

> It shall be unlawful for any person . . .
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . .
>
> (B) to initiate any telephone call to any residential telephone line *using* an artificial or prerecorded voice to deliver a message

---

[1] The majority acknowledges, as it must, that the term "call" includes "a text message" under the TCPA. *Majority Opinion*, p. 12. *See also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

[2] The plaintiff sought relief under this section of the TCPA.

> without the prior express consent of the
> called party, unless the call is initiated for
> emergency purposes.

(Emphasis added).

We have repeatedly noted that the TCPA was enacted "to
protect the privacy interests of residential telephone
subscribers by placing restrictions on unsolicited, automated
telephone *calls*." *Trim v. Reward Zone USA LLC*, 76 F.4th
1157, 1160 (9th Cir. 2023) (quoting S. Rep. No. 102-178 at
1 (1991)) (internal quotation marks omitted) (emphasis
added).  Similarly, in *Satterfield*, we emphasized:

> The TCPA was enacted in response to an
> increasing number of consumer complaints
> arising from the increased number of
> telemarketing *calls*.    The consumers
> complained that such *calls* are a "nuisance
> and an invasion of privacy."  The purpose and
> history of the TCPA indicate that Congress
> was trying to prohibit the use of [Automatic
> Telephone Dialing Systems (ATDSs)] to
> communicate with others by telephone in a
> manner that would be an *invasion of privacy*.
>
> The language and purpose of the TCPA
> support the conclusion that the use of an
> ATDS *to make any call, regardless of
> whether that call is communicated by* voice
> *or text*, is prohibited. . . .

569 F.3d at 954 (citing and quoting S. Rep. No. 102-178 at
\*2 (1991)) (emphases added); *see also Loyhayem v. Fraser
Fin. and Ins. Servs., Inc.*, 7 F.4th 1232, 1234 (9th Cir. 2021)

(holding that the TCPA "prohibits in plain terms '*any call,'
regardless of content*, that is made to a cell phone using an
automatic telephone dialing system or an artificial or pre-
recorded voice") (citation omitted) (emphasis added);
*Facebook, Inc. v. Duguid*, 592 U.S. 395, 408 n.8 (2021)
(observing that the TCPA prohibits "artificial or prerecorded
voice *calls*, irrespective of the type of technology used")
(citation omitted) (emphasis added).

The district court dismissed Howard's action for failure
"to state a claim to relief that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation
omitted). However, in his complaint, Howard alleged that
"Defendant placed, or caused to be placed, an automated text
message to Howard's cellular telephone number" and that
"the text message included a video file that was
automatically downloaded to Howard's phone and contained
an artificial or prerecorded voice." These allegations set
forth the elements of the statute. Defendant made a call by
way of a text message. *See Satterfield*, 569 F.3d at 954
(holding that the term "call" includes a "text message" for
purposes of the TCPA). In addition, Howard alleged that the
call was made using an "artificial or prerecorded voice."
These allegations stated a plausible claim under Section
227(b)(1)(A). *See Loyhayem*, 7 F.4th at 1234 (recognizing
that the plaintiff stated a valid claim by alleging that the call
"was made using . . . an artificial or pre-recorded voice.").

Under our analysis in *Loyhayem*, Howard also plausibly
stated a violation of Section 227(b)(1)(B) by alleging that
Defendant "placed, or caused to be placed, an automated text
message to [Howard's] cellular telephone number," which
also served as his "residential telephone."

To state a plausible claim under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only file a complaint that "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (citation and internal quotation marks omitted).  A claim is "plausible on its face . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

As previously stated, Howard alleged that "Defendant placed, or caused to be placed, an automated text message to [Howard's] cellular telephone number," and that "the text message contained an artificial or prerecorded voice."  From the allegations, a reasonable inference may be drawn that the defendant is liable for violating Section 227(b)(1)(A), which proscribes making an unconsented to call using "an artificial or prerecorded voice."  Since it is undisputed that a text message constitutes a call for purposes of the statute, *see Satterfield*, 569 F.3d at 954, the only element of the statute at issue is the use of "an artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A).[3]

The majority takes the position that Howard failed to state a plausible claim because he failed to allege that the "video file that was automatically downloaded" to his cellular telephone was "*made* or *initiated*" by the defendant "*using* the artificial or prerecorded voice."  *Majority Opinion*, p. 15 (alteration and internal quotation marks

---

[3] The majority takes no issue with Howard's allegation that his cellular telephone is also his residential telephone for purposes of § 227(b)(1)(B).

omitted).**[4]** The majority reasons that the prohibitions of
Section 227 apply only when artificial or prerecorded voices
are used "to *begin* a call." *Id.* p. 16 (emphasis in the
original). But the majority's interpretation falters for two
independent reasons. The first is that it violates a cardinal
commandment of statutory construction: thou shall not add
words to a statute in the process of rendering an
interpretation. *See Jones v. Bock*, 549 U.S. 199, 216-17
(2007). In *Jones*, the United States Supreme Court
addressed the issue of exhaustion under the Prison Litigation
Reform Act (PLRA), which requires administrative
exhaustion of prisoner claims before filing a court action.
*See id.* at 211. The Supreme Court acknowledged that
"exhaustion is mandatory under the PLRA and that
unexhausted claims cannot be brought in court." *Id.* (citation
omitted). Nevertheless, the Supreme Court rejected a
reading of the PLRA that would place the burden on the
prisoner "to plead and demonstrate exhaustion in the
complaint." *Id.* at 211-12 (citation omitted). In rejecting this
reading of the statute, the Supreme Court reasoned:

> We conclude that failure to exhaust is an
> affirmative defense under the PLRA, and that
> inmates are not required to specially plead or
> demonstrate exhaustion in their complaints.
> We understand the reasons behind the
> decisions of some lower courts to impose a

---

[4]The majority accuses me of ignoring "the import of the critical terms
'make' and 'intake.'" *Majority Opinion*, p. 16 n.4. However this
accusation embodies some sophistry. If one looks closely at this
argument, it becomes obvious that the majority has switched the focus
of the "make" and "initiate" language from the "call" as stated in the
statute, to the video file, which is actually part of the "call" in the text
message. *Satterfield*, 569 F.3d at 954.

> pleading requirement on plaintiffs in this
> context, but that effort cannot be fairly
> viewed as an interpretation of the PLRA.
> Whatever temptations the statesmanship of
> policy-making might wisely suggest, *the
> judge's job is to construe the statute – not to
> make it better*. *The judge must not read in by
> way of creation, but instead abide by the duty
> of restraint, the humility of function as merely
> the translator of another's command*.

*Id.* at 216 (citation, alteration, and internal quotation marks
omitted) (emphasis added).

In reaching its conclusion, the Supreme Court quoted
and relied upon its seminal and time-tested decision in the
case of *United States v. Goldenberg*, 168 U.S. 95 (1897). In
that case, the Supreme Court cautioned against "judicial
addition to the language of the statute." *Id.* at 103. The
Supreme Court in *Goldenberg* emphasized that:

> The *primary* and general *rule of statutory
> construction* is that the *intent of the lawmaker
> is* to be found in the language that he has
> used. . . . The courts have no function of
> legislation, and simply seek to ascertain the
> will of the legislator. . . . No mere omission,
> no mere failure to provide for contingencies,
> which it may be wise to have specifically
> provided for, *justify any judicial addition to
> the language of the statute*. . . .

*Id.* at 102-03 (emphases added).

In accordance with its holding in *Goldenberg*, the Supreme Court ruled in *Jones* that "[g]iven that the PLRA does not itself require plaintiffs to plead exhaustion, such a result must be obtained by the process of amending the Federal Rules, and *not by judicial interpretation*." *Jones*, 549 U.S. at 217 (citation and internal quotation marks omitted) (emphasis added).

Similarly, in *Planes v. Holder*, 652 F.3d 991 (9th Cir. 2011), we relied upon *Goldenberg* to foreclose the adding of elements to a statute under the guise of interpretation. In *Planes*, we declined to "deviate from the plain language of the statute" defining the term "conviction" by "hold[ing] that an alien does not stand 'convicted' for immigration purposes until any direct appeals as of right have been waived or exhausted." *Id.* at 995. Citing *Jones* and quoting from *Goldenberg*, we reiterated that "[r]egardless of our view on the wisdom or efficacy of Congress's policy choices, we are not free to read in additional elements where the legislature has declined to include them." *Id.* at 996 (citation omitted). Yet, that is precisely what the majority has done. The majority interprets the TCPA as "only limit[ing] the use of artificial or prerecorded voices to *begin* a call." *Majority Opinion*, p. 16 (emphasis in the original). Essentially, the majority changes the wording of the statute from making it "unlawful [under § 227 (b)(1)(A)] for any person . . . to *make* any call using an . . . artificial or prerecorded voice" to making it "unlawful for any person . . . to *begin* any call using an . . . artificial or prerecorded voice." Similarly, the majority's reading would change the statute making it "unlawful [under § 227(b)(1)(B) to initiate any telephone call to any residential telephone *using* an artificial prerecorded voice" to making it "unlawful to initiate any

telephone call to any residential telephone line *beginning with* an artificial or prerecorded voice."

This change to the wording of the statute strays from the clear direction provided in *Jones*. As with the PLRA statute in *Jones* that did not "itself require" the pleading of exhaustion, neither does the TCPA "itself require" that the call begin with the use of an artificial or prerecorded voice. 549 U.S. at 217. The majority's addition of this language to the statute cannot be reconciled with the Supreme Court's decision in *Jones* and *Goldenberg* or our decision in *Planes*.

The majority couches its addition to the statute as "coher[ing] with the declared purpose of the statute." *Majority Opinion*, p. 16. But in *Goldenberg*, the Supreme Court instructed that "the intent of the lawmaker is to be found in the language that he has used," not in adding additional language to the statute. 168 U.S. at 102-03. Indeed, any omission in the statute cannot "justify any judicial addition to the language of the statute." *Id.* at 103. And in *Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1047 (9th Cir. 2017), we emphasized that "[b]ecause the TCPA is a remedial statute intended to protect consumers from unwanted automated telephone calls and messages, it should be construed in accordance with that purpose." (citation omitted). The majority's interpretation does exactly the opposite.

The Supreme Court acknowledged in *Jones* that it is understandable why the majority is of the view that a better reading of the statute would make unlawful only those calls that "begin with the use of an artificial or prerecorded voice." But that is simply not how the statute reads. As in *Jones*, the majority's preferred reading of the statute "must be obtained by the process of amending the [TCPA], and not

by judicial interpretation." 549 U.S. at 217. It is not our role to "make [the statute] better," or "read in by way of creation." *Id.* at 216. Rather, we must "abide by [our] duty of restraint [and] humility of function as merely the translator[s] of [Congress's] commands." *Id.* (citations omitted). The majority's unrestrained rewriting of the statute "cannot be fairly viewed as an interpretation of the [TCPA]." *Id.*

I remain singularly unpersuaded by the majority's conviction that the scope of the TCPA should be circumscribed. *See Majority Opinion*, p. 16, describing the "line drawn" limiting the statute to "artificial or prerecorded voices [that] begin a call." *Id.* There is absolutely nothing in our precedent that supports this limitation on the reach of the TCPA. As discussed, the language of the statute encompasses "any call," not a limited set of calls. *Loyhayem*, 7 F.4th at 1234. And we have consistently and definitively cast the word "any" as conveying a broad scope. *See, e.g., Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1080 (9th Cir. 1999); *United States v. Hernandez*, 894 F.3d 1104, 1108 (9th Cir. 2018*)*; *Patel v. Garland*, 596 U.S. 328, 329 (2022).

Secondly, and importantly, the majority's interpretation of the statute conflicts with our precedent. In *Loyhayem*, we held that the plaintiff stated a plausible claim when he alleged that the defendant "left a pre-recorded voicemail message . . . using both an automated telephone dialing system and an artificial or pre-recorded voice." 7 F.4th at 1233-34. We explained that the statute "prohibits in plain terms 'any call,' *regardless of content . . . using . . .* an artificial or pre-recorded voice." *Id.* at 1234 (emphases added). Unlike the majority, we did not require that the call "begin" with the artificial or prerecorded voice. *Majority*

*Opinion*, pp. 16-17. Rather, the text message is the "call," *Satterfield*, 569 F.3d at 954, and the "content" is the video file containing the "artificial or pre-recorded voice." *Loyhayem*, 7 F.4th at 1234.[5]

In sum, under the "plain terms" of the TCPA, *Loyhayem*, 7 F.4th at 1234, Howard stated a plausible claim. The majority impermissibly adds language to the "plain terms" of the TCPA in concluding otherwise. *Id.* I respectfully dissent.

---

[5] The majority seeks to avoid our holding in *Loyhayem* by maintaining that in *Loyhayem* we did not address the issue before this panel. *See Majority Opinion*, p. 17, n.6. I beg to differ. In *Loyhayem*, we expressly ruled that the TCPA "prohibits *in plain terms, any call*, *regardless of content . . . using . . .* an artificial or pre-recorded voice." 7 F.4th at 1234 (emphasis added). This language plainly encompasses a text message call where the "content" used an artificial or pre-recorded voice." *Id.* The Supreme Court agrees. *See Facebook*, 592 U.S. at 408 n.8 (describing the TCPA as prohibiting "artificial or prerecorded voice calls, irrespective of the type of technology used") (citation and internal quotation marks omitted). The majority seeks to downplay the quoted language from *Facebook*, *see Majority Opinion*, p. 17-18, n.6 (cont.), but the fact remains that the Supreme Court quote is verbatim.